## VERNON v. SAM S. & LEE SHUBERT, Inc., et al.

(District Court, S. D. New York. February 8, 1915.)

1. COPYRIGHTS ⟨key⟩65—INFRINGEMENT OF COPYRIGHT OF PLAY—SIMILARITY IN CHARACTERS AND PHRASEOLOGY.

Where defendants' play was the result of the independent efforts of its authors, who had never heard of plaintiff, or heard of or seen his copyrighted play, and though there were characters in both plays having a similarity, and some instances of similar phraseology, the theory of the two plays and the method of execution were entirely different, there was no infringement of plaintiff's copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 62; Dec. Dig. ⟨key⟩65.]

2. COPYRIGHTS ⟨key⟩90—BILL FOR INFRINGEMENT—COSTS.

Where, though defendants did not infringe plaintiff's copyright on a play by the production of a play having some similar characters and phraseology, plaintiff by a combination of circumstances was led to the belief that his work had been appropriated by defendants, and his suit for infringement was brought in good faith, costs would not be awarded against him.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 85; Dec. Dig. ⟨key⟩90.]

In Equity. Suit by John H. Vernon against Sam S. & Lee Shubert, Incorporated, and others. Bill dismissed.

Benjamin, Shepard, Houghton & Taylor, of New York City (Harry W. Mack, of New York City, of counsel), for complainant.

Max D. Steuer and William Klein, both of New York City, for defendants.

MAYER, District Judge. [1] Plaintiff, who is engaged in a mercantile business, wrote a play called "Threads of Destiny." His first version was copyrighted on September 9, 1911. On March 22, 1912, a second version was copyrighted, which did not differ from the first in any substantial respects, but which contained some additions and rephrasing.

Plaintiff claims that his copyright has been infringed by a play called "At Bay," which was not copyrighted until May 12, 1913. The latter play was the result of the joint labor of Mr. Scarborough and Mr. Augustus Thomas. Mr. Scarborough had been in the employ of the Department of Justice and was familiar with the so-called secret service of the United States. It was quite natural, therefore, that if he tried his hand at playwriting his efforts would be along the line of his own information or experience. This was practically Mr. Scarborough's first play, but nevertheless he hit upon an ingenious

situation, which to the experienced playwright would suggest valuable dramatic possibilities. That situation was the touching off of a flashlight by a dying man in order to obtain the photograph of the woman who had killed him and in the surroundings where the act had been done. There is no doubt whatever that Mr. Scarborough did his original work independently, and never at any time had read nor heard of the "Threads of Destiny." Mr. Scarborough's early draft was called "The City of Indiscretion," and was copyrighted on February 8, 1912.

Through Mr. Andrew Mack, an actor who was a friend of Mr. Scarborough, Mr. Augustus Thomas was prevailed upon to read Scarborough's play. Mr. Thomas is a playwright of ripe experience, who has written fully half a hundred plays to which he has signed his name, and, in addition, has collaborated with others from time to time; his practice in collaborations being not to attach his name to the play. By virtue of his skill and training, Mr. Thomas, of course, would be likely to see in what directions an idea or a situation basicly clever or useful could be practically worked out for the ultimate result of a stage production. Mr. Thomas has testified that he never knew nor heard of Mr. Vernon, nor the "Threads of Destiny," prior to the time that "At Bay" was completed.

As the result of conferences and discussions between Mr. Scarborough and Mr. Thomas, Mr. Scarborough's first act was retained and was made the second act of "At Bay." Mr. Scarborough wrote Act I, and Mr. Thomas wrote Acts III and IV; all of the new or revised work being done in accordance with a plan agreed on after joint consideration. Much of the "City of Indiscretion" was abandoned, and it is urged that there are striking similarities between "Threads of Destiny" and "At Bay." I have no doubt that "At Bay" was the result of the independent effort of Mr. Scarborough and Mr. Thomas, precisely as they have testified.

What has aroused the suspicions of Mr. Vernon is an incident or series of incidents now quite familiar to me in this class of litigation. The defendant Mr. Huffman acts, at times, as stage director for the Messrs. Shubert. Mr. Huffman is sui generis, and cannot be appreciated unless seen and heard. He works when he feels like it, does or does not do what his employers desire as his fancy may suggest, answers or does not answer telephones as he may be inclined, and tells budding authors anything pleasant or unpleasant which for the moment will relieve him of further conversation or of the necessity of reading a play. In fact, he so completely separates business from recreation that the one thing which evidently he dislikes to do is to witness a play. At times he is compelled to do this in those productions where he is acting as stage director, but once this task is performed Mr. Huffman goes his way, dismissing from his mind the stage, the play, the managers, and the actors.

In some casual way Mr. Vernon met Mr. Huffman, and that meeting, together with the unsolicited sending of the manuscript to Huffman, unanswered telephone calls, and one telephone conversation, would naturally arouse suspicion in the mind of a layman; but it is quite apparent that Huffman never read the play "Threads of Des-

tiny," and certainly never communicated its contents nor its substance to any of the other defendants, and had no part whatever in or relation to its production. Of course, as so often happens, there are some characters in both plays having a similarity, and there are here and there some instances of similar phraseology. But that is a very old story in playwriting, because, after all, there are not so many themes around which a play may be plotted. Secret marriages, district attorneys, murders, office boys, blackmailers, good people, and bad people have walked about behind the footlights for many a day; but the only way to arrive at a conclusion on the merits in a case like this is to endeavor to discover the theory of the play and, generally speaking, the method of its execution.

Concededly the "Threads of Destiny" is crude in workmanship, but that would not necessarily defeat the plaintiff. But the theory of the two plays is different. In the "Threads of Destiny" the author attempts to enforce the theory that destiny is all-controlling. The central figure is the district attorney, the woman is placed in most unenviable environment, and at the end of the play the father gives a demonstration of how the love of a child is greater than ambition or desire for worldly progress.

In "At Bay" the authors had no mission. Their purpose was to provide an evening's entertainment, which would bring customers to the box office, and thereby royalties to the authors. In "At Bay" the district attorney is an incidental figure, and the hero is a courageous, manly, refreshing young gentleman, who, to protect his fiancée, is engaged in a battle of wits with the supposedly shrewd officers of the law. Broadly speaking, the method of execution is entirely different, and the play, as Mr. Thomas said, is built around the flashlight incident, because from that time on the whole effort is to destroy the units which, if combined, would make the evidence of the supposed crime.

The case possibly might go off on technical grounds suggested by defendant Shubert Corporation, but these need not be considered because, on the merits, there is no infringement. Mr. Thomas, like other well-known men who are writers or producers of plays, receives many communications. His only protection is to pursue the course which he testified was pursued in this case, namely, not to read unsolicited manuscripts. It is not at all clear that the manuscript of plaintiff ever reached the now deceased secretary of Mr. Thomas; but, assuming that it did, it is entirely clear that Mr. Thomas never saw this manuscript.

[2] Yet I can see how the plaintiff, by a combination of circumstances, was led to the belief that his work had been appropriated, and how, therefore, the suit was earnestly brought and in good faith, and under all these circumstances costs will not be awarded against him.

The bill will be dismissed, without costs.