CHAUTAUQUA SCHOOL OF NURSING v. NATIONAL SCHOOL OF NURSING.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

No. 10.

COPYRIGHTS &53—SCOPE OF COPYRIGHT—INFRINGEMENT—WHAT CONSTITUTES.

Complainant's copyrighted publication, dealing with hypodermic medication, divided the operation into 12 successive steps, illustrating the steps by cuts taken from photographs of a person actually performing the operation and administering the hypodermic injection. Defendant disposed of a copyrighted lecture on medicines and their administration, prepared by an army surgeon. One division of the surgeon's lecture was

devoted to the hypodermic, and was accompanied by 12 cuts, showing the successive steps of the operation, which were actual protographs of the surgeon's hands performing the same. *Held* that, as the process of hypodermic medication is a matter of common knowledge, in which complainant could acquire no exclusive property, and ·as it is not essential that a production, to be original and new within the copyright laws, shall be different from an earlier production, but only that it shall disclose original work, the lecture prepared by the army surgeon, though similar to complainant's lecture, showed an original work, and was not an infringement.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 51; Dec. Dig. ☞53.]

, Appeal from the District Court of the United States for the Western District of New York.

Suit by the Chautauqua School of Nursing against the National School of Nursing. From a decree for complainant (211 Fed. 1014), defendant appeals. Reversed.

Stanchfield, Lovell, Falck & Sayles, of Elmira, N. Y., for appellant. Thrasher & Clapp, of Jamestown, N. Y., for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. Appeal from a decree of the District Court holding the defendant guilty of infringing the complainant's copyright and ordering it to surrender all infringing publications in its possession or under its control to the complainant.

Each of the parties conducts a school for the education of nurses by correspondence and by printed lectures and books. In 1910 the complainant published and copyrighted its lecture No. 6, entitled "Remedies, the Methods by which they are Administered," some 12 out of 39 pages of which were devoted to hypodermic medication. The operation was divided into 12 successive steps, and the text describing and explaining it was numbered and divided in the same way. There were cuts of various forms of syringes obtained from the makers, directions how to use them, and as to the drugs and doses to be administered. Finally, there were 12 cuts taken from photographs of a person actually performing the operation of preparing and administering a hypodermic injection. In 1912, Maj. Charles R. Reynolds, a ·surgeon in the United States Army, published and copyrighted a lecture entitled "Medicines and Their Administration." The defendant obtained from him the right to print, sell, and distribute the lecture, and was doing so. Out of 39 pages, 17 are devoted to "The Hypodermic." The lecture divides the operation into 12 successive steps, described by separately numbered divisions of the text. It has cuts of syringes obtained from the manufacturers, directions as to their uses, the drugs and doses to be given, and 12 cuts showing the successive steps of the operation, being actual photographs of Maj. Reynolds' hands performing the same.

Infringement is charged, especially in connection with the subject of hypodermic injections. Of course, all previous medical knowledge was common property to any writer. There is in neither lecture any exercise of the imagination or any original investigation. But the complainant alleges that, though it originated nothing new, it was the

first to treat separately the successive steps in the operation as generally practiced and to illustrate each pictorially. The evidence sustains this allegation. We do not understand such a plan of instruction to be copyrightable. It is a startling proposition to say that the complainant has secured the monopoly for 28 years of stating in separate categories and illustrating pictorially the successive steps of this very well known operation. It is said in Drone on Copyright, p. 205:

"*Works Alike May be Original.*—It is not essential that any production, to be original or new within the meaning of the law of copyright, shall be different from another. Whether the composition for which copyright is claimed is the same as or different from, whether it is like or unlike, an existing one, are matters of which the law takes no cognizance, except to determine whether the production is the result of independent labor or of copying. There cannot be exclusive property in a general subject, or in the method of treating it; nor in the mere plan of a work; nor in common materials, or the manner or purpose for which they are used. The rights of any person are restricted to his own individual production. There is nothing in the letter or the spirit of the law of copyright to prevent or to discourage any number of persons from honestly laboring in the same field. Two or more authors may write on the same subject, treat it similarly, and use the same common materials in like manner and for one purpose. Their productions may contain the same thoughts, sentiments, ideas; they may be identical. Such resemblance or identity is material only as showing whether there has been unlawful copying. In many cases, the natural or necessary resemblance between two productions, which are the result of independent labor, will amount to substantial identity. Thus, the differences will be often slight, and sometimes immaterial, between two descriptions of a common object; two compilations of like materials; two maps, charts, or road books of a common region; two directories of one city; two photographs of the same scene; two engravings of the same painting. But, notwithstanding their likeness to one another, any number of productions of the same kind may be original within the meaning of the law; and no conditions as to originality are imposed on the makers, except that each shall be the producer of that for which he claims protection."

Considering the text first: The complainant had no monopoly of the things taught in its lecture, because they were the common teaching. Maj. Reynolds, in preparing his lecture, had a right to consult all previous publications on the subject, including the complainant's lecture No. 6, and to state in his own language what he thought to be the proper and the best practice. From the nature of things there were certain to be considerable resemblances, just as there must be between the work of two persons compiling a directory, or a dictionary, or a guide for railroad trains, or for automobile trips. In such cases the question is whether the writer has availed himself of the earlier writer's work without doing any independent work himself.

In respect to the pictures, if Maj. Reynolds had rephotographed the complainant's, he would have been clearly availing himself of the complainant's work, and so an infringer. The evidence, however, is clear that he had original photographs taken of his own hands manipulating the instruments from the beginning to the end of the operation. That the pictures in each lecture should resemble each other is quite natural, because these successive steps illustrate the practice in general use. With these considerations in mind, we are not at all satisfied, upon comparing the two lectures, that Maj. Reynolds has appropriated the complainant's work.

The decree is reversed.