WALTER C. McKAY, Plaintiff, *v.* PEGGY L. BARBOUR et al., Defendants.

Supreme Court, Special Term, New York County, November 22, 1950.

894

*Murray Monness* and *Julian T. Abeles* for plaintiff.

*Abraham L. Berman* and *Francis Gilbert* for defendants.

ISIDOR WASSERVOGEL, Official Referee. Plaintiff seeks an injunction, an accounting and damages based upon the alleged infringement of the common-law copyright of his unpublished song known as "Laughing Song" by the music of the individual defendants' song entitled "Mañana." The individual defendants' song was published and copyrighted by the defendant Barbour-Lee Music Corporation and was mechanically reproduced on phonograph records by the defendants Capitol Records, Inc., Decca Records, Inc., and Radio Corporation of America.

Plaintiff has been a professional entertainer for approximately forty years. He contends that he wrote "Laughing Song" in 1918, and since 1919 has continuously featured it in his performances. "Mañana," the defendants' song, was written in the latter part of 1947, and published and copyrighted on January 26, 1948. The alleged copying of plaintiff's composition is denied by the defendants. They claim that "Laughing Song" is not an original piece of music, and that, in any event,

the plaintiff lost his rights thereto, if any rights existed, under the laws of the State of California, where he resided, by virtue of his repeated public performances of the musical composition.

The obvious similarity between the two songs here involved is not disputed by any of the parties. As a matter of fact, the resemblance between "Laughing Song," as plaintiff claims to have written it, and "Mañana," as evidenced by the published version thereof, amounts to an approximate identity, which has caused all parties to agree that a physical copying of one song from the other must have taken place by one of the litigants in this action. The issue narrows down, therefore, to the factual determination of whether the individual defendants or either of them committed the act of plagiarism.

It is fundamental that in order to establish wrongful appropriation of his song, plaintiff must prove that the defendants had access to and copied from his musical composition. Plaintiff has advanced the argument that the conceded similarity or identity of the two songs is sufficient to indicate both access and copying by the defendants. The court does not take issue with the authorities cited by plaintiff in support of this contention. The factual situation presented herein, however, and the assertion by the defendants that the plaintiff copied his song from the published version of "Mañana" requires the court to examine all the circumstances surrounding the publication and rendition of *both songs*, rather than to summarily dispose of the dispute on the narrow ground of identity of the music.

As already stated, plaintiff claims to have commenced singing his song in or about 1919. At that time, the defendant Peggy Lee Barbour was not yet born, and her husband, the defendant Dave Barbour, was a very young child. For a period of approximately fifteen years, from 1927 to 1942, the plaintiff gave performances outside of the United States, traveling in Europe, the Orient, and other distant countries. The record shows that the individual defendants never travelled or gave performances outside the continental limits of the United States, with the exception of having visited Canada, Mexico, and Cuba. Plaintiff testified that he sang at certain hotels, nightclubs, fraternal organizations, veterans' hospitals and army camps. The individual defendants denied having entertained in any of the specific places named by the plaintiff. It is to be noted that these defendants are well known in the entertainment world, while, on the other hand, the plaintiff is comparatively unknown. It is most unlikely that the plaintiff would have featured his

song or performed on the same program, at the same place, or at the same time as the individual defendants, because of the difference in their standing in the entertainment field.

Plaintiff's testimony itself eliminates the possibility of the individual defendants ever having secured a physical copy of his song. Plaintiff admits that he never gave away any copies of his composition, nor did he at any time submit a copy thereof for publication. With the exception of an orchestration, which allegedly was lost in 1918, and a copy of his song, which plaintiff contends was lost in Honolulu in 1937, every copy of the musical score that he had made was still in his possession and produced at the trial of this action. "Laughing Song" was never recorded, no records thereof were ever issued, nor was the song ever performed or publicized over the radio, or by any means other than plaintiff's personal performances.

Assuming, *arguendo,* that the individual defendants or any person known to them had heard the plaintiff sing his song, the testimony of expert witnesses conclusively proves that it would have been impossible for them to have reduced it to writing with the exactness and identity shown by the musical score of both songs. The improbability of such an occurrence is more apparent when it is evident even to an untrained ear that the plaintiff, in the rendition of his song, never repeats the melody in the same way. This is clearly indicated by the recordings which plaintiff made for the purposes of this trial, by his subsequent performances in court, and by the testimony of an expert witness called in his behalf, who stated that the notes of the song varied each time they were sung by plaintiff.

An examination of the relative opportunity for access that each party had to the work of the other indicates the possibility that plaintiff may have written his composition in the form produced at the trial after "Mañana" had been published, widely performed and acclaimed as a hit song. The pencilled corrections found in one of plaintiff's copies are indications that an attempt may have been made by him to conform the "Laughing Song" to the musical score of "Mañana." The court does not doubt that plaintiff's original composition may have been similar to defendants' song. The ultimate success of "Mañana," however, may have been the stimulus for further emulation by the plaintiff.

At the trial of this action, plaintiff produced three manuscripts of the melodic score of his song, which copies purportedly were made in 1934, 1939, and 1943, all prior to the time

" Mañana " was written. There is some evidence on the record to warrant the conclusion that the musical notations on all of these copies were made at the *same time,* rather than over a period of nine years, as alleged by plaintiff. In any event, plaintiff's expert testified that the alleged 1934 copy was " amateurish " and " not the work of a trained musician." Plaintiff's alleged 1939 copy was described by this expert as " a more professional style of writing," while, on the other hand, the latest copy, which was purportedly made by plaintiff in 1943, was again characterized as reverting to " an amateurish style of writing." It is to be noted that while the alleged 1934 and 1943 " amateurish copies " differ slightly from the printed notation of the defendants' song, the so-called 1939 copy is identical in all respects with the printed version of " Mañana." At no time was the alleged 1939 copy available to the defendants but a printed copy of " Mañana " was readily accessible and available to the plaintiff after its publication.

Plaintiff testified that he had had little musical education. Nevertheless, the alleged 1939 copy contains difficult musical syncopation, which likewise appears in the defendants' song, and which plaintiff's expert stated would require the special services of an arranger, far beyond plaintiff's apparent abilities. Although the syncopations appear in the printed publisher's copy of " Mañana," and in only *one* copy of plaintiff's song, it is significant to note that they do not appear in the defendant Barbour's manuscript. The syncopations were not the musical creation of either of the individual defendants, but rather of the defendant-publisher's arranging department. The identity between the complicated printed version of defendants' song and plaintiff's purported 1939 copy leads to the conclusion that such copy probably had been made from the printed and published version of defendants' composition " Mañana."

I hold, therefore, that the plaintiff has failed to establish by a preponderance of the credible evidence that the individual defendants or either of them had access to or copied his composition, " Laughing Song." In view of this holding, it is unnecessary for the court to consider at length the effect of the California statute governing the public performance of " a product of the mind " and its extra-territorial applicability in an action brought in the State of New York (Civil Code of California, § 983). It is sufficient to note that if the plaintiff's work became a part of the public domain by virtue of the laws,

of the State of California, his rights would be no greater in this State in an action based upon the same publication, particularly as plaintiff and defendants are residents of the State of California.

Judgment is rendered for the defendants dismissing the complaint upon the merits. No costs are awarded.

Submit decree within ten days on three days' notice.

The foregoing are the facts found by me and constitutes the decision of the court as required by section 440 of the Civil Practice Act.