ALFRED L. SMITH, Plaintiff, *v.* IRVING BERLIN et al., Defendants.

Supreme Court, Special Term, New York County, April 27, 1955.

*Julius Kass* for plaintiff.

*Monroe Goldwater* for defendants.

FRANK, J. The plaintiff in this equity action seeks an accounting by and an injunction against the defendants.

The suit is based on the charge that the defendant Irving Berlin copied and tortiously appropriated an unpublished musical composition called " I fell in Love ", allegedly created by the plaintiff Alfred L. Smith during the week ending May 16, 1947. Mr. Smith contends that Mr. Berlin in composing a song called " You're Just in Love ", first publicly performed in Boston on September 18, 1950, copied the thirty-two bars of music in the first and third choruses from the chorus of his song written three years before.

The defendants categorically deny the charge. Berlin, in addition, asserts that the music and the lyrics of the song " You're Just in Love " were his original creation.

It is conceded that the above-mentioned parts of both songs are identical. There is no dispute that the lyrics bear no resemblance to each other and no claim of copying is made with respect to them.

The plaintiff's claim is predicated upon a " Common Law Copyright ", sometimes referred to as the right of first publication.

In common-law copyright, to constitute the tortious appropriation of musical property, the proof should establish the priority of the plaintiff's composition and that the defendant with animus furandi obtained access to and copied it. Access is an indispensable ingredient in the proof of piracy (Ball on The Law of Copyright and Literary Property, p. 602; *Tamas* v. *20th Century Fox Film Corp.*, 25 N. Y. S. 2d 899; *Lewys* v. *O'Neill*, 49 F. 2d 603; *Sarkadi* v. *Wiman*, 43 F. Supp. 778).

" Cases involving musical compositions are not many, but the principles are very well established in the few decisions published. The plaintiff must prove access and identity. If there is no identity, access is, in itself, of no importance whatsoever. If there is identity, then access becomes an important matter, which may determine the claim " (*Carew* v. *R. K. O. Radio Pictures*, 43 F. Supp. 199, 200).

At the commencement of the trial, the plaintiff asserted that he would prove access by the defendants through someone associated with them.

The principal witness called to establish the cause of action was the plaintiff himself. Alfred L. Smith is fifty-three years of age and lives with his wife and his daughter, now about eighteen. He is, by trade, a gold stamper and works with gold leaf, dies, leather and adhesives. In addition to the composition of songs, he has worked on some inventions and designs not otherwise identified and not patented. The latter and some songs not copyrighted, he sought to protect by enclosing each in a registered envelope mailed to himself.

Mr. Smith has had no musical education or training. He can neither read nor write musical notes. He plays no musical instrument. In 1931, he composed his first song by humming it to one, Silverman, who wrote it on music manuscript paper. Two songs, one called " I'm a Dreaming Fool " and the other written shortly thereafter, were copyrighted by Silverman as the composer of the music with Smith as the lyricist. Both Silverman and the plaintiff testified, however, that although Smith composed the music, it was credited to Silverman in appreciation for his transcriptions.

Although most of Smith's songs were filed for copyright, the one in this case was not. Not one of his songs was ever published. He, however, paid $75 to have 1,000 copies of " I'm a Dreaming Fool " printed.

The plaintiff's version of the genesis of the song, " I fell in Love ", which he alleges was pirated, will be briefly stated. On a Friday night in March, 1947, in a restaurant he frequented, Smith became acquainted with a man named Willie Moskowitz. He continued to meet Moskowitz every Friday night for thirteen consecutive weeks but not until the ninth time, on May 2d, did he disclose that he was a composer. In response to Moskowitz's curiosity, on May 9th the plaintiff showed him two compositions. In the ensuing week, at the suggestion of his new acquaintance, the plaintiff conceived the song " I fell in Love ". He wrote down the music by means of an alphabetical system of his own devising. On May 15, 1947, he went to another restaurant he patronized, near New York University, and found a music student who then and there transcribed it for him. That was the first and last time he ever saw this young man.

Later, at home, he made two copies. One he kept in a carton in a closet, the other he enclosed in an envelope addressed to himself. On May 16, 1947, he mailed the envelope containing

the manuscript by registered mail. Although he had the original in his pocket when he met Moskowitz later that day, he did not give it to him. The plaintiff's reason for this reticence was that the registered letter had not yet been delivered to his home. At their next meeting on May 23d, Smith gave Moskowitz the original manuscript written by the unknown student. They met the following week, May 30th, but there is nothing in the record concerning any conversation with reference to the song on this occasion. That was the last time Smith saw Moskowitz. Nor could he ever find him thereafter.

Plaintiff's testimony with respect to Moskowitz was intended to establish access by the defendant Berlin. It fell far short of the mark. Not even inferentially has any association or contact between Moskowitz and the defendants been established. The evidence was quite to the contrary. Testimony offered by the defendants proved that no Willie Moskowitz was ever employed by either of them and Berlin has never known anyone bearing that name. We have only the plaintiff's word that any such persons as Willie Moskowitz and the music student ever existed. No witness was produced who ever saw Smith and Moskowitz or Smith and the music student together. The plaintiff asserted that a lawyer by the name of Klein helped him search for Moskowitz. Klein was not called to give evidence. Smith's testimony concerning his hunt for Moskowitz was unconvincing. His statement that he looked for a man presumably identified with Berlin in a number of bars on the Bowery was incredible.

Smith named two different places at which he picked up the music student. To fortify the plaintiff's story about the transcription of the song, Sidney Seltzer, the restaurant owner, was called. Even assuming that his recollection of the incident was accurate after the passage of so many years, it failed to corroborate Smith. The witness never saw Smith engaged in the act of writing with any person.

The plaintiff testified that over the years three people (Silverman, Gordon, Gerald) wrote his music for him. No proof was offered to explain the failure to use one of them or someone equally well known to him. That Smith would entrust the transcription of his opus to an utter stranger, in preference to others upon whom he could rely, taxes the court's credulity. The testimony with respect to the incident must be rejected.

It must be found that the plaintiff has failed to prove, upon the credible evidence presented at the trial, that the defendants or either of them had or obtained access to the plaintiff's manuscript.

This finding is buttressed by the change in position taken by plaintiff's counsel. At the commencement of the trial, it was stated that access would be established through someone associated with Mr. Berlin. At its conclusion, it was conceded that access, if any, must be found only in " identicality ".

The failure of the plaintiff to prove the defendants' access to his manuscript by direct proof or inferentially by circumstantial evidence leaves for determination the proposition that access may be inferred from the identity of melody in the two songs in question.

To sustain the charge of copying, more than similarity and identity must be shown (*Fred Fisher, Inc.,* v. *Dillingham,* 298 F. 145, 147; *Lloyd Corp.* v. *Witwer,* 65 F. 2d 1, 4). An inference of copying may arise when there is proof of access coupled with a showing of similarity (*O'Rourke* v. *RKO Radio Pictures,* 44 F. Supp. 480, 482). With access and identity assumed, the ultimate offense to be established is the tortious copying (*Columbia Pictures Corp.* v. *Krasna,* 65 N. Y. S. 2d 67, affd. 271 App. Div. 1008; see, also, *Dellar* v. *Samuel Goldwyn, Inc.,* 104 F. 2d 661). The explanation of the origin of the material allegedly plagiarized is sufficient to defeat the plaintiff, even where access was proved (*McConnor* v. *Kaufman,* 49 F. Supp. 738, affd. 139 F. 2d 116). In *Darrell* v. *Morris Music Co.* (113 F. 2d 80), the Circuit Court affirmed judgment for the defendants even where 1,500 copies of the plaintiff's song had been printed and it had been sung publicly for three years.

The case of *McKay* v. *Barbour* (199 Misc. 893) presents a similar factual picture but much stronger for the plaintiff than the case at bar. Although the opinion does not indicate it, the record discloses that the plaintiff sought to establish priority by means of a registered envelope. Judge WASSERVOGEL, finding for the defendant, stated (p. 895) : " The obvious similarity between the two songs * * * amounts to an approximate identity. * * * Plaintiff has advanced the argument that the conceded similarity or identity * * * is sufficient to indicate both access and copying * * * The factual situation * * * requires the court to examine all the circumstances surrounding the publication and rendition of *both songs,* rather than to summarily dispose of the dispute on the narrow ground of identity of the music.''

The plaintiff insists that two major inferences be drawn: first, that the conceded identity permits only the conclusion that access was achieved; second, that the inference of access requires the additional inference that a tortious appropriation occurred.

It seems to the court that the contention of the plaintiff requires the basing of one inference upon another. One presumption cannot be based on another presumption, and " ' inferences cannot be founded on inferences ' " (*Superior Ind. Gas Corp.* v. *National Cylinder Gas Co.*, 64 N. Y. S. 2d 244, 248, affd. 272 App. Div. 836; *Grawunder* v. *Beth Israel Hosp. Assn.*, 242 App. Div. 56, affd. 266 N. Y. 605).

To ascertain whether the identical chorus in both songs justifies the inference of access to Smith's manuscript, it is of some moment to consider the circumstances under which the Berlin song was composed.

Parenthetically, the testimony revealed that Mr. Berlin can neither read nor write music, has had no formal musical education and can only play chords on a piano in the key of F sharp. He composes the music by playing or singing to an arranger, in this case, Helmy Kresa. The lyrics he types out himself.

Early in 1950, Berlin was engaged to write the music and the lyrics for a musical play entitled " Call Me Madam ". Howard Lindsay and Russel Crouse were the authors of the book, Leland Hayward was the producer, and George Abbott the director. Irving Berlin composed ten songs for it. When the production opened in New Haven on September 11, 1950, for the first of a series of try-out performances, two situations were evident. The first was that two of the songs interfered with the pacing and continuity of the play; the second, that the performance of Russell Nype would unquestionably attract favorable public attention. The testimony was not contradicted that at that time the song " You're Just in Love " was not in the play, had not been rehearsed and, according to Berlin and his arranger Helmy Kresa, had not been written. To fit the story and the action and to feature Miss Ethel Merman, the star, and Mr. Nype, George Abbott suggested that Berlin write a song to be sung by both performers. That such a number would be peculiarly suitable for the play was attested to by Russel Crouse, who participated in a conference with Abbott and Lindsay with reference to it. Crouse and Berlin stated that Abbott suggested the unusual arrangement used by Berlin in an old song of his called " Play a Simple Melody ". That song had a unique structure difficult, if not impossible, for the average professional song writer to compose. Mr. Berlin, however, had accomplished it several times.

Briefly stated and without resort to technically accurate musical terminology, such a song comprises a principal or smooth melody and another different one as a counterpoint.

What was intended and achieved by Berlin in " You're Just in Love " was a song with two distinct and unrelated melodies and lyrics which harmonize and blend when sung simultaneously by two different voices.

Two men, distinguished in the world of music, were called as experts: Abram Chasins, a noted pianist and composer, for the plaintiff; and John Tasker Howard, composer, author and curator of the Americana Music Collection, for the defendants. Mr. Chasins stated that Mr. Berlin was internationally recognized for his unique genius in the complete blending of lyrics and music. Mr. Howard testified that there is such a " perfect wedding of words and music " that they seem to be conceived together. There was unanimity that " You're Just in Love " was a combination of lyrics and music typical of the distinctive style and virtuosity of Irving Berlin.

From the testimony, the court finds that the song " You're Just in Love " was written in New Haven during the week of September 11, 1950. It was written to interpret musically the love interest in the plot as well as for the express purpose of providing a vehicle for presenting the two stars jointly. It is further found that the first rehearsals took place in New Haven and that the piano and orchestral arrangements were prepared during that week. The song was first publicly presented in Boston on September 18, 1950. The inability of the defendants to call Howard Lindsay, George Abbott, Miss Merman and Russell Nype to corroborate the witnesses mentioned was satisfactorily explained.

One of the counsel stated that the two melodies in dispute are so identical that the question to be resolved was " Who stole from whom? " With that statement we shall assume general agreement and proceed to a consideration of the proof with respect to it.

Before the inference of access from identity may even be considered, it is incumbent upon the plaintiff to prove the priority of his composition. To do so, the plaintiff offered proof of (1) a rendition of it, and (2) the sealed, registered-mail envelope.

Smith claimed that he sang " I fell in Love " at a New Year's Eve party on December 31, 1947. Four couples were present. Although there was no proof that the others were not available, only one of the other seven testified in corroboration. Mrs. Ida Schwartz, a housewife whose musical education twenty-eight years before at age eleven had been limited to about eighteen months, testified in substance that it was the first time she met

Smith, and she never saw him again until a conference took place in his lawyer's office. The song did not impress Mrs. Schwartz very much and she never thereafter heard the melody until the Berlin song, sounding vaguely familiar, was broadcast on the radio about three years later. There is nothing in the record to indicate when and to whom Mrs. Schwartz first disclosed her discovery, or the time when she was invited to give evidence. Her opinion that the Berlin song is identical with the one Smith sang three years before was predicated upon her assertion that both melodies have a " Hebraic chant ". On the trial it was obvious, from the rendition of both songs and the testimony of the experts, that neither is in a minor key.

Upon the proffered testimony and the omission to produce some of the others claimed to have been present or to explain their absence, it must be held that the plaintiff has failed to establish by any credible evidence that the song entitled " I fell in Love " was sung by him on the night of December 31, 1947.

Upon an examination before trial, the plaintiff produced the sealed registered envelope, bearing cancellation date, May 16, 1947. When opened, it contained a manuscript of the song " I fell in Love " in plaintiff's lettered handwriting. This proof was offered to establish that plaintiff composed his song before the defendants wrote and published " You're Just in Love ".

There was no dispute that this envelope, in addition to the mucilage placed on the flap by the manufacturer, contained an adhesive of a different type. The plaintiff, experienced in the use of this material, asserted that he superimposed the added substance on the flap before he sealed the envelope. The defendants contended that the envelope was opened and resealed after its delivery to the plaintiff and before it was finally cut open in 1953. Mr. Smith's veracity is therefore directly involved. The litigants presented testimony by qualified examiners of questioned documents and in addition the plaintiff called an expert chemist and physicist.

Albert Osborne, called by the defendants, gave his opinion and the basis for it on two points : (1) that plaintiff's manuscript was written between October, 1950, and March, 1951; (2) that the envelope had been opened and resealed.

All the experts agreed that there is no known method for definitely determining the age of ink. Mr. Osborne, by comparing photographic enlargements of portions of the Smith manuscript and writings of the plaintiff admittedly made between October, 1950, and March, 1951, expressed the opinion that the manuscript was written at about the same time, with the

same pen and with the same water-diluted black ink as the specimens dated 1950 and 1951. In rebuttal, there was no categorical denial of this opinion and proof by either the plaintiff or his handwriting expert, Francis D. Murphy.

It is obvious that if Smith's manuscript were not written before October, 1950, it could not have been enclosed in an unopened envelope stamped May, 1947. It was Mr. Osborne's opinion that the envelope had been opened and resealed after its delivery. On cross-examination, he testified that he had made many such experiments. On redirect, two exhibits were received in evidence as some proof that Osborne had done so. Much of the testimony by the plaintiff's experts was devoted to proof that Osborne's resealing of his test envelopes was not perfectly done. Whether Osborne's resealing was skillful or inept is not the issue here. In view of the cross-examination, the proof was received as evidence that it could be done, not as proof a fortiori that, having been performed by the handwriting expert, it was also done by the plaintiff.

Osborne's opinion was corroborated by Mr. Ordway Hilton, another examiner of questioned documents. The court was convinced by Hilton's testimony. The difference in the size of the letters in registry stamp No. 4 which cross the seam of the envelope can, in our view, be accounted for only by the replacement of the flap tighter or closer to the joining paper than it was when the stamp was originally impressed thereon. An examination of the enlargement of this stamp with the red-ink guide-lines superimposed, clearly indicated to the court the foreshortening of the letters which crossed the flap. While the plaintiff's experts expressed the opinion that the envelope had not been tampered with and resealed, Dr. Manning did admit that there was a variance of as much as one thirty-second of an inch in the letters on the stamp. No such variance was found in any of the other rubber-stamp impressions not crossing the envelope seams.

There was no dispute that the envelope was addressed with a ball-point pen. The experts agreed that the pressure of the pen imbossed or impressed some of the writing on the inside of the envelope. Significantly, no comparable impression could be found on the manuscript contained therein, although Smith stated that he enclosed it before addressing the envelope.

It is noteworthy, too, that the plaintiff did not explain why envelope and contents claimed to have been written at or about the same time were done in different inks by different pens.

It is of more than passing import that the plaintiff's wife, stated to have been in court during most of the trial, was not

called as a witness. She attended the New Year's Eve party. She was present when the copies were purportedly made on the kitchen table. It was asserted that she received delivery of the registered letter allegedly containing the copy of the manuscript. The failure to call her must be deemed a circumstance weighing against the plaintiff.

With respect to the credibility of the plaintiff, brief reference will be made to some items of proof germane to that issue, in addition to those already discussed. As indicated, Smith stated that on May 15, 1947, he made two copies of the original transcript of his song, one on a blank sheet of manuscript paper, the other on half of a double sheet on which there was a copy of his song " I'm a Dreaming Fool ". On a pretrial examination, before the envelope was opened, Smith testified that the sheet containing both songs was the one enclosed therein. However, when the envelope was opened, he discovered he was in error because the enclosed sheet had only the song, " I fell in Love ". The testimony so given could not have been the truth. If in fact he had made an error as to which copy was enclosed, he would have discovered it before the examination because the unenclosed copy must have been examined by him and his former lawyers before the commencement of the action, if for no other reason than to compare it with the Berlin song. When produced in court, the copy of the song not enclosed in the envelope was on a single sheet. Smith then said this was detached from Exhibit 7 by Mr. Klein, his former lawyer. Klein was not called as a witness. While the experts for the respective litigants disagreed as to whether the two exhibits were originally joined, the defendants produced the superintendent of the plant where the paper had been printed. This completely disinterested witness testified that the two sheets were never joined as one, because on double sheets the identifying imprint appears but once whereas it is present on each of these two sheets. The court finds the fact to be that Exhibits 7 and 8 were never one sheet of paper.

The plaintiff testified that he handed two sealed registered envelopes to another lawyer he had formerly employed. One was plaintiff's Exhibit 5 and the other a registered letter addressed to Irving Berlin, returned to him after it had been refused by the defendant. Smith asserted that this letter was never given back to him by the attorney, despite numerous requests. The defendants called the attorney as a witness. Mr. Greenberg testified that he received but one sealed and registered envelope from the plaintiff and that it was addressed

to Smith; that it was either plaintiff's Exhibit 5 or one similar to it.

These are just a few of the many specific situations in which the plaintiff's testimony proved to be unreliable or untrue.

Upon the entire record, the testimony of Mr. Smith must be rejected, as must be his veracity and credibility.

The court is satisfied from the credible evidence and the inferences therefrom, that plaintiff's Exhibit 6 was not written in 1947 but after the fall of 1950, and that the envelope was opened and resealed after its delivery in May, 1947.

The credible evidence on the trial and the inferences logically flowing therefrom, utterly negate any presumption of access to the plaintiff's manuscript by the defendants by reason of identity. The plaintiff has failed to establish by a fair preponderance of the credible evidence: (1) his priority of composition of the song in dispute; (2) his original conception of it; (3) that he conceived and wrote " I fell in Love " in 1947 and before the defendant Berlin composed the song " You're Just in Love " in 1950.

As heretofore stated, the song " You're Just in Love " was a typical Berlin composition. It received wide public acceptance. Distribution of printed sheet music began on October 10, 1950, and over 170,000 copies were sold in the first nine months.

Smith admitted that he had access to the Berlin song after its publication. The inference that he copied it is inescapable from the proof. Examination of some of the titles of plaintiff's songs gives additional support to such an inference. " By the Mill Road " is reminiscent of the old ballad " Down by the Old Mill Stream ". His " In the Town of Capri " resembles " On the Isle of Capri ". Smith's " Talking, Walking, Speaking " imitates the words " walkie talkie " in one of the hit tunes of " South Pacific ". Other titles, " My Hawaiian Rose ", " Irene ", " Pining for You ", " Thinking of You ", indicate the same lack of originality.

From a study of the lyrics and music of the plaintiff's compositions in the record, it is a fair conclusion that he has no demonstrated ability to produce a song comparable to the one he claims was pirated.

In *Lloyd Corp.* v. *Witwer* (65 F. 2d 1, *supra*), the court in discussing Mr. Lloyd said (p. 18): " Men must be judged as reasonable beings in appraising their conduct." What Judge LEARNED HAND, in an action charging the pirating of a song (*Fred Fisher, Inc.*, v. *Dillingham*, 298 F. 145, *supra*), said (p. 147) of Mr. Jerome Kern can with at least equal emphasis be applied

to Mr. Berlin: " No producer willingly invites the suits which follow musical piracy   *   *   *   With the profit small and price high, it seems to me unlikely that he should have set about deliberate plagiarism."

The charge made against the defendants herein was serious indeed. Only one living in such a void as to be utterly ignorant of the tastes and customs, the joys and sorrows of the American people, could be unaware of Irving Berlin's enriching contributions to Music Americana for almost half a century. The record reveals that more than eight hundred songs composed by him have been copyrighted. Of these many have been woven into our national mores.

The proof in this case does not justify, nor common sense permit, the inference that Mr. Berlin would jeopardize the singular place he has earned from the extraordinary achievements of a lifetime, by the tortious appropriation of this song.

Since findings of fact and conclusions of law were waived, this constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. The clerk is directed to enter judgment for the defendants on the merits. A thirty-day stay and sixty days to make a case are granted. The exhibits may be obtained from the clerk.